## CONTINENTAL INS. CO. OF CITY OF NEW YORK v. FORTNER.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1928.

No. 4865.

1. Insurance ⊜⟶323(1)—Vacancy clause held inapplicable, in view of provision permitting completion of building then under construction.

Where, at time of issuance of fire insurance policy on frame building, building was under construction, and policy contained provision granting permission to complete building if under construction, *held*, that vacancy clause in policy was not available to the insurer as a defense, since it applied only to premises which were susceptible of occupancy when the policy issued.

2. Insurance ⊜⟶146(3)—Court in construing policy must consider every provision and adopt construction most favorable to policyholder in case of ambiguity.

In construing a fire insurance policy, court must consider every provision contained in it, and, in case of ambiguity or contradictory terms, must adopt the construction most favorable to the policyholder.

3. Appeal and error ⊜⟶997(3)—Trial ⊜⟶177 —On mutual requests for directed verdict, judge is authorized to find facts, and his conclusions thereon must be sustained if supported by substantial testimony.

Where both parties requested directed verdict, judge was authorized to find the facts, and

his conclusions thereon must be sustained if supported by any substantial testimony.

**4. Appeal and error ⟘231(3)—Where objections to alleged incompetent testimony stated no grounds therefor, they are not open to consideration on appeal.**

Where most of testimony as to adjuster's statement to insured and insurance agent was admitted without objection and in cases in which objections were made no grounds therefor were stated, the objections are not open to consideration on appeal.

**5. Trial ⟘105(1)—Testimony admitted without objection is evidence, even if incompetent.**

Where testimony is admitted without objection, such testimony is evidence, even if in fact incompetent.

**6. Appeal and error ⟘918(1)—It will be assumed that, if objection had been made to alleged insufficiency of pleadings, court would have granted permission to amend.**

Where alleged insufficiency of pleadings was not raised below, court will assume on appeal that, if objection had been raised, permission to amend pleadings would have been granted.

**7. Insurance ⟘559(1)—Insurer denying liability before lapse of period for furnishing proof of loss is precluded from asserting failure to timely file such proof.**

If insurer in terms denies liability before lapse of 60-day period for furnishing proofs of loss, it will be precluded from setting up as defense alleged failure to file such proofs within 60 days.

**8. Insurance ⟘665(8)—Evidence held to sustain finding that statements and conduct of adjuster representing insurer constituted waiver of timely proof of loss.**

In action on fire insurance policy for destruction of dwelling by fire, evidence *held* to sustain finding that adjuster represented insurer, and that his statements and conduct constituted a waiver by insurer of timely proof of loss.

**9. Insurance ⟘376(2)—Clause in policy prohibiting waiver unless indorsed thereon is inapplicable to stipulations such as giving notice and furnishing preliminary proofs.**

A clause in a policy of insurance, prohibiting any waiver unless indorsed thereon, refers only to those provisions of policy which enter into and form part of contract of insurance, and which may properly be designated as conditions, and has no reference to those stipulations which are to be performed after loss has occurred, such as giving notice and furnishing preliminary proofs.

**10. Insurance ⟘559(1)—Insurer's denial of liability held waiver of condition requiring proofs of loss.**

The fact that the insurer denies liability and refuses to pay on the ground of lack of contract, or lack of liability is itself a waiver of condition requiring proofs of loss.

**11. Insurance ⟘388(3)—Waiver of forfeiture of policy may be created by acts or declarations insufficient to create technical estoppel.**

Waiver of forfeiture of policy, though in nature of estoppel, may be created by acts, conduct, or declarations insufficient to constitute technical estoppel.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by H. L. Fortner against the Continental Insurance Company of the City of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Joseph S. Laurent, of Louisville, Ky. (T. M. Galphin, Jr., and Robert G. Gordon, both of Louisville, Ky., on the brief), for plaintiff in error.

Leslie W. Morris, of Frankfort, Ky. (Marion Rider, of Frankfort, Ky., and H. W. Alexander, of Owenton, Ky., on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is brought to review a judgment below in favor of plaintiff (defendant in error here) against the insurance company for the amount of a loss by fire under a policy issued by defendant to plaintiff. The parties will be designated as arranged below.

The policy, known as a "standard dwelling house policy," and dated December 1, 1924, insured plaintiff for $3,500 upon a frame building described. The building was entirely destroyed by fire April 10, 1925, which was four months and nine days after the policy issued—at which time, and when the fire occurred, the building was entirely unoccupied and unfurnished, and was still in course of original construction. During all this time plaintiff resided in a dwelling located on a lot adjacent to that on which stood the insured building here in question, all to the knowledge of defendant's local agent who issued the policy.[1]

The two houses were about 30 feet apart. Both were consumed by the fire, which started in the occupied dwelling and passed to the one under construction and here involved.

---

[1] The defendant's agent testified: "Before issuing the policy we inspected the property and found it to be weather-boarded and under roof, and the windows and outside doors were in. I understood that the building was under course of construction, and Mr. Fortner intended to occupy it when it was completed. The house was still under construction when the fire occurred."

The two houses were insured in different companies.

Right of recovery was contested by defendant on two grounds: First, that at the time of the fire the building had been vacant for more than 60 continuous days and had been devoid of personal habitation for that entire period, in alleged violation of a general provision of the policy quoted in the margin hereof.[2] That general provision was modified by this agreement indorsed on or added to the policy: "Permission granted for the within described premises to be and remain vacant for not exceeding 60 days at any one time, the term 'vacant' being construed to mean an empty building devoid of personal habitation; or to be and remain unoccupied for a period not exceeding 6 months at any one time, the term 'unoccupied' being construed to mean a building that is entirely furnished but with personal inhabitants temporarily absent."

The second ground on which liability was contested was the failure of plaintiff within 60 days after the fire to render a statement, signed and sworn to by him, setting out the facts required by the policy as proofs of loss; the policy providing that no suit or action thereon for recovery of any claim shall be sustainable in any court of law or in equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within 12 months next after the fire. Suit was seasonably begun.

The case was tried to a jury. At the close of the testimony, each party moved the court, without more, for a directed verdict in his or its favor. Thereupon the court peremptorily instructed the jury to render verdict for the plaintiff for the full amount of the policy. There were verdict and judgment accordingly.

[1] We think the court rightly held that the vacancy clause invoked was inapplicable to the situation presented here, for the reason that it applied only to premises which were susceptible of occupancy when the policy issued; the *actual* situation here being covered by a separate and distinct policy provision, viz.: "Permission granted to make alterations, improvements, and repairs, to any building herein described, *and to complete same if under construction,* and the insurance, if any herein, on such building is hereby extended and made to cover such alterations, improvements and repairs, and the

building material and supplies therefor or entering into the construction of such building while contained therein or on the premises immediately adjacent thereto."[3]

[2] It is elemental that in construing this policy we must consider every provision contained in it, and, in case of ambiguous or contradictory terms, must adopt the construction most favorable to the policyholder. We think that under the provision last quoted plaintiff was given the right to complete the building in process of construction when the policy issued, as fully as if the word "building" had been used instead of the word "same," where preceding the words "if under construction." We see no inconsistency between plaintiff's right to rely upon this provision for leave to complete a building *under construction* and the provisions hereinbefore cited relating to a 60-day vacancy and a 6 months' unoccupancy of a hitherto unoccupied building; and we see no merit in the suggestion that the "under construction" clause should be limited to a 60-day vacancy. The most which we think can be claimed by defendant's interpretation of the "under construction" clause is that there is an ambiguity. But ambiguities must be resolved in plaintiff's favor.[4] We are cited to no specific authority in support of defendant's interpretation of the policy, nor do we know of any.[5]

We think plaintiff's failure to file proofs of loss, signed and sworn to by him, within 60 days after the fire, is not available as a defense under the facts of this case. At the outset, it may properly be said that plaintiff's

---

[3] All italics in this opinion ours unless otherwise stated.

[4] We see no force in the contention that the completion of the building was unduly delayed. We find no limitation of time for completion of a building under construction.

[5] We do not think our interpretation weakened by the fact that, following the description of the building, and the enumeration of the various fixtures and appurtenances covered by the insurance, occur the printed words, "occupied and to be occupied only for dwelling purposes." Indeed, we do not understand defendant so to contend. We think the words, "only for dwelling purposes," intended to exclude a use of the building for general business purposes. They are, we think, in no sense a warranty that the building is at the time the policy issued actually occupied as a dwelling. We think the "under construction" provision is to the contrary; and so is the general vacancy and unoccupancy clause, if construed as defendant contends it should be, as applying to a vacancy and unoccupancy existing when the policy issued. And see the printed note on the face of the policy: "For information only—the above-described dwelling is occupied, *or* to be occupied, by —— families."

---

[2] "This entire policy, unless otherwise provided, by agreement indorsed hereon, or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

entire good faith is not, upon this record, open to question. There was express and undisputed testimony that after the fire defendant's local agents, who issued the policy in suit, sent defendant a formal notice of loss prepared by them, on written blanks, which had been furnished them by defendant for that general purpose, and advised plaintiff of the fact—one of these agents assuring plaintiff that it was not necessary to file proofs of loss within 60 days after the fire, also telling plaintiff to let him (the agent) "manage it," that he "would get my money, that there wouldn't be any trouble, and that I wouldn't be bothered about it." The local agent thinks defendant did not acknowledge receipt of this notice. That agent had estimates of the loss made by a lumber and hardware dealer. Later (about 10 or 15 days after the fire, according to plaintiff's undisputed testimony) there appeared an adjuster, understood by the local agent to represent the Underwriters' Adjusting Agency, which adjusted losses for different companies. This adjuster "looked over the situation," and to him the local agent turned over the estimates on *both* buildings, which the adjuster took with him. The agent had to write the adjuster to get the estimates back. The local agent brought up with the adjuster the liability of the defendant; the adjuster replied that the "house was vacant, he would have to take it up with the Continental." There was express and undisputed testimony that, when the adjuster was figuring over the "old building," plaintiff in the office of the local agent, asked, "What about the new building?" to which the adjuster replied, "Why, you will not get anything on that," adding, "I am not here seeing about that, I am here to adjust the old house;" and did not, with plaintiff, go further into or discuss an adjustment on the new house. He "would not talk to me about the new house." The local insurance agent also testified that on July 20th, after the 60 days had expired, "we made out proofs of loss" and "mailed them by registered mail to the defendant," and introduced the receipt which "shows that they were received." The proofs appear to have been sent by defendant to its attorney July 30th. It is fairly inferable from the record that the defendant itself never communicated with plaintiff after the fire, nor with the local agent, with respect to the loss here in question. It appears that amended proofs of loss, dated August 27th, were sent to defendant, which sent them to its attorney, apparently already employed to defend this action, and that defendant's

attorney, on September 1st, in writing, notified plaintiff that "these papers cannot be accepted as satisfactory proofs of loss, for the reason that the same were not furnished within 60 days from the date of the fire, and for the further reason that the property was vacant when the loss occurred; we hold these papers subject to your order"; and on September 4th wrote plaintiff's representative formal denial of liability, for the reasons stated in the letter of defendant's attorney of September 1st.

In sustaining plaintiff's motion for directed verdict, the trial judge announced the conclusion that the adjuster represented defendant in his actions and statements to plaintiff and the insurance agent; that "it is reasonable to conclude under this evidence that they [the defendant company] received notice of the fire, and it is reasonable to conclude that they sent an adjuster there for the purpose of adjusting this loss; he comes out of this general adjusting company down here at Louisville, the Underwriters' Adjusting Company, which represents a number of companies, not unlikely he represented the Continental Company"; and, further, that the adjuster's statement that defendant was not going to pay the loss was a waiver of proofs of loss; and, ·still further, that defendant's action in retaining the proofs for five weeks (although furnished after the 60-day period) amounted to a waiver of the failure to furnish.in 60 days.

[3] We agree with the trial judge's conclusion above stated (although we do not place reliance upon defendant's mere ·retention of proofs furnished more than 60 days after the fire). Under the mutual requests for directed verdict the judge was authorized to find the facts, and his conclusion thereon must be sustained if supported by any substantial testimony. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Thomas-Bonner Co. v. Hooven Co. (C. C. A. 6) 284 F. 386, 392; Ætna Co. v. Licking Valley Co. (C. C. A. 6) 19 F.(2d) 177, 178. We think the statements of the adjuster, in connection with the other established facts and circumstances are very substantial evidence in support of the trial judge's conclusion that the adjuster represented and stood for defendant. The evidence to that effect gains added force from the fact that defendant put in no testimony whatever, and thus *the entire testimony introduced by plaintiff stands undisputed.*[6]

---

[6] The statement in plaintiff's brief that the adjuster attended the trial throughout is not challenged by defendant.

[4, 5] True, defendant contends here that the testimony of the adjuster's statements to plaintiff and to the insurance agent was incompetent. Were such the case, it would be enough to say that no such objection was made below. For the most part, the testimony in question went- in without objection; and, while the record shows, as to some questions, "defendant by counsel objects; objection overruled; exception"—in no place was any ground for the objection stated. The objections are thus not open to consideration here. Robinson v. Van Hooser (C. C. A. 6) 196 F. 620, 624, 625, and cases there cited. The testimony was evidence, even if in fact incompetent. Schlemmer v. Railway Co., 205 U. S. 1, 9, 27 S. Ct. 407, 51 L. Ed. 681.

[6, 7] Whether or not the adjuster's statements were specifically or sufficiently pleaded by plaintiff as constituting a waiver of proofs of loss is not here important. It is not clear that the pleading was insufficient. However that may be, the question was not raised below. Had it been, permission to amend the pleadings presumably would have been granted. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 F. 572, 578; Pennsylvania Co. v. Burgerson (C. C. A. 3) 296 F. 311, 315. Had liability been in terms denied by defendant before the lapse of the 60-day period for furnishing proofs of loss, defendant plainly would be precluded from making this defense. Life Insurance Co. v. Pendleton, 112 U. S. 696, 709, 5 S. Ct. 314, 28 L. Ed. 866; Royal Ins. Co. v. Martin, 192 U. S. 149, 162, 24, S. Ct. 247, 48 L. Ed. 385.

[8-10] We think the District Judge's conclusion of law, that the statements and conduct of the adjuster—representing and standing for defendant—was a waiver of proof of loss is correct. It is the prevailing rule that a clause in a policy of insurance prohibiting any waiver unless indorsed thereon refers only to those provisions of the policy which enter into and form part of the contract of insurance, and which may properly be designated as conditions; it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proofs.[7] Moreover, the fact that the insurer denies liability and refuses to. pay, on the ground of lack of contract or lack of liability, is itself a waiver of the condition requiring proofs of loss, as held in the Pendleton and Martin Cases recently cited.[8]

We find in Northern Assur. Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, nothing opposed to this conclusion. That decision related to the failure of the insured to give notice of the existence of other insurance.

We think Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140, equally inapplicable here; and we have held generally that an insurance company may waive any provisions in the policy for its protection, including even a provision that the waiver must be indorsed on the contract itself. Hanover Fire Ins. Co. v. Dallavo (C. C. A.) 274 F. 258, 261, 262, and decisions of the Supreme Court there cited.

[11] But whether the effect of defendant's conduct is called waiver or estoppel is not controlling. Waiver of forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel. New York Life Ins. Co. v. Dumler (C. C. A. 5) 282 F. 969, 973. Cf. American Fire Ins. Co. v. King Lumber Co., 250 U. S. 2, 13, 39 S. Ct. 431, 63 L. Ed. 810; 14 R. C. L. p. 1345, § 517. The result is the same, for we think it the natural and logical conclusion from the record that defendant itself (as distinguished from its adjuster) if not before the adjuster went down, then immediately. thereafter, and not improbably with knowledge of the adjuster's statement to plaintiff that payment of the loss would not be made, definitely decided not to pay the loss, and in effect ratified the adjuster's action, which plaintiff had the right to regard as that of defendant. In such case there is no equity in the defense that proofs of loss were not seasonably made.

In our opinion, the judgment of the District Court should be affirmed. This conclu-

---

[7] 14 R. C. L. pp. 1345, 1346, §§ 517, 518; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank (C. C. A. 9) 261 F. 470, 475, 476; McCollough v. Insurance Co., 155 Cal. at pages 659, 664, 102 P. 814, 18 Ann. Cas. 862, in this case waiver was by the adjuster; Franklin Co. v. Chicago Co., 36 Md. 102, 119, 120, 11 Am. Rep. 469; Rokes v. Insurance Co., 51 Md. 512, 520, 524, 34 Am. Rep. 323, the nonwaiver clause in that case was very broad; Washburn v. Merchants' Co., 110 Iowa, 423, 425, 427, 81 N. W. 707, 80 Am. St. Rep. 311; Carson v. Insurance Co., 43 N. J. Law, 300, 310, 39 Am. Rep. 584; Snyder v. Insurance Co., 59 N. J. Law, 544, 546, 548, 37 A. 1022, 59 Am. St. Rep. 625; Alliance Ins. Co. v. Enders (C. C. A. 9) 293 F. 485, 488. Cf. Bernhard v. Insurance Co., 79 Conn. 388, 65 A. 134, 8 Ann. Cas. 298.

[8] In the insurance cases just cited there was no endorsement on the policy, nor does it appear that there was therein any written waiver of proofs of loss. The waiver resulted from the fact of denial of liability. The result would be the same, whether or not denial was in writing.

sion makes it unnecessary to consider whether the action of the local insurance agent amounted to, or contributed to effect, a waiver of the failure to furnish proofs of loss seasonably.